PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4067
_____

IN RE: BLOOD REAGENTS ANTITRUST LITIGATION

Ortho Clinical Diagnostics, Inc.,
Appellant

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-md-02081)
(Honorable Jan E. DuBois)
_____

Argued: February 12, 2014

Before: SMITH, CHAGARES, and SCIRICA, Circuit Judges

(Filed:  April 8, 2015)

Richard E. Coe, Esq.
Joanne C. Lewers, Esq.
Chanda A. Miller, Esq.

Paul H. Saint-Antoine, Esq. [ARGUED]
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square, Suite 2000
Philadelphia, PA  19103

    *Counsel for Appellant*

Jay S. Cohen, Esq.
Jeffrey J. Corrigan, Esq. [ARGUED]
Rachel E. Kopp, Esq.
Jeffrey L. Spector, Esq.
Spector, Roseman, Kodroff & Willis
1818 Market Street
Suite 2500
Philadelphia, PA  19103

    *Counsel for Appellees*

————————

OPINION OF THE COURT
————————

**SCIRICA**, *Circuit Judge*.

The principal issues in this appeal under Federal Rule of Civil Procedure 23(f) in this antitrust action are (1) whether Rule 23 requires scrutiny under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), of challenged expert testimony and (2) the propriety of class certification in light of the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)

(*Comcast*), which reversed *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011) (*Behrend*), after the District Court relied on *Behrend* in granting class certification. Because we find that the District Court had no opportunity to consider the implications of *Comcast* and hold that, if applicable, a court must resolve any *Daubert* challenges to expert testimony offered to demonstrate conformity with Rule 23, we vacate and remand.[1]

## I.[2]

Plaintiffs are direct purchasers of traditional blood reagents, products used to test blood compatibility between donors and recipients, from two companies, defendants Immucor, Inc., which has settled with plaintiffs, and Ortho-Clinical Diagnostics, Inc., the appellant here. Plaintiffs claim

---

[1] The District Court had jurisdiction under 15 U.S.C. § 15(a) and 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1292(e) and Rule 23(f). We review the grant of class certification for an abuse of discretion, which occurs if the certification "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (citation omitted). "Whether an incorrect legal standard has been used is an issue of law to be reviewed *de novo*." *Id.* (alteration and citation omitted).

[2] The District Court's Memorandum provides a more detailed description of the alleged facts in this case. *See In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222 (E.D. Pa. 2012).

Ortho and Immucor violated federal antitrust law by conspiring to fix traditional blood reagent prices.

By 1999, the entire domestic supply of traditional blood reagents had come under the control of Ortho and Immucor in a duopoly in which both companies anticipated they could raise their prices and increase their profits.[3] In November 2000, Ortho and Immucor executives attended an annual trade meeting at which plaintiffs assert the conspiracy began. Soon thereafter, both Ortho and Immucor began increasing traditional blood reagents prices in rapid succession, and by 2009, many prices had risen more than 2000%. Following a Department of Justice probe, a number of private suits were filed and transferred by the Judicial Panel on Multidistrict Litigation to the District Court, which consolidated them in December 2009.

Plaintiffs seek damages under the Clayton Act, *see* 15 U.S.C. § 15, for alleged horizontal price fixing in violation of the Sherman Act, *see* 15 U.S.C. § 1. In July 2012, after preliminary approval of plaintiffs' settlement with Immucor, the court held a hearing to determine whether to certify plaintiffs' class of "[a]ll individuals and entities who purchased traditional blood reagents in the United States directly from Defendants Immucor, Inc., and Ortho-Clinical

---

[3] During the 1980s and 1990s, the traditional blood reagent market was highly competitive. Faced with more than a dozen competing companies and low profit margins, Ortho considered abandoning the industry while Immucor approached bankruptcy. At some point in the 1990s, Immucor began to acquire competing producers and by 1999, Immucor and Ortho were the only remaining firms in the U.S. market.

4

Diagnostics, Inc. at any time from January 1, 2000 through the present." 283 F.R.D. at 247. The court then certified the class over Ortho's objection. We granted Ortho's petition to appeal under Rule 23(f).

## II.

Plaintiffs relied in part on expert testimony to produce their antitrust impact analyses and damages models. The District Court evaluated the testimony, the reliability of which Ortho consistently challenged, and, in part by holding that the testimony "could evolve to become admissible evidence" at trial, determined that plaintiffs had met Rule 23(b)(3)'s predominance requirement. *See* 283 F.R.D. at 243-45 (quoting *Behrend*, 655 F.3d at 204 n.13). Relying on our decision in *Behrend*, the court rejected Ortho's challenges to plaintiffs' damages models as irrelevant to class certification because, the court reasoned,

> [v]irtually all of Ortho's arguments go to the merits of the models [plaintiffs' expert] has constructed: the question whether the models give rise to "a just and reasonable inference or [are] speculative." *Behrend*, 655 F.3d at 206. These merits questions have some force, and they may prove persuasive at the summary judgment stage. However, they do not overlap with the Rule 23 requirements, because they neither implicate a need for individual proof nor convince the Court that [the] models could not "evolve to become admissible evidence." *Id.* at 204 n.13.

5

*Blood Reagents*, 283 F.R.D. at 240-41 (third alteration in original).

On appeal, Ortho contends the trial court failed to rigorously scrutinize whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In particular, pointing to *Comcast*, Ortho asserts the trial court erred by declining to address at class certification whether plaintiffs' damages models were capable of producing just and reasonable damage estimates at trial and by accepting plaintiffs' theory as capable of proving classwide antitrust impact.[4] Ortho also argues that, under the class certification

---

[4] More specifically, Ortho contends that plaintiffs' expert's methodologies cannot prove antitrust impact as a matter of law because they are incapable of distinguishing lawful price increases resulting from the creation of a duopoly from price increases resulting from the alleged price-fixing conspiracy. Ortho bases this argument in part on statements in *Comcast* such as, "Prices whose level above what an expert deems 'competitive' has been caused by factors unrelated to an accepted theory of antitrust harm are not 'anticompetitive' in any sense relevant here," 133 S. Ct. at 1435, and the suggestion that a damages model must be able "to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to" the antitrust violation, *id. See also, e.g.*, *id.* at 1433 (stating that "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to" the "theory of antitrust impact accepted for class-action treatment," and those damages must be "susceptible of measurement across the entire class"); *id.* at 1435 ("The first step in a damages study

6

standard, the trial court should have scrutinized the plaintiffs' expert's testimony under *Daubert*.

## III.

## A.

Because the District Court did not have the opportunity to consider *Comcast*'s later-issued guidance in the first instance, we will vacate the class certification order and remand for reconsideration. Without foreclosing what other conclusions the District Court might reach regarding *Comcast*'s ramifications for antitrust damages models[5] or proving antitrust impact,[6] we believe *Behrend*'s "could evolve" formulation of the Rule 23 standard did not survive *Comcast*. *See Comcast*, 133 S. Ct. at 1433 (criticizing *Behrend* for "finding it unnecessary to decide 'whether the [expert's damages] methodology [was] a just and reasonable inference or speculative'" and indicating that such a methodology is not "acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be" (second alteration in original) (quoting *Behrend*, 655 F.3d at 206)). As we stated in *In re Hydrogen Peroxide Antitrust Litigation*, the "proper task" of the trial court is "to consider carefully all relevant evidence and make a definitive

---

is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.'" (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011))).

[5] *See generally Comcast*, 133 S. Ct. at 1433-35.

[6] *See supra* note 4 and accompanying text.

7

determination that the requirements of Rule 23 have been met before certifying a class." 552 F.3d 305, 320 (3d Cir. 2008). "Class certification requires a finding that each of the requirements of Rule 23 has been met," *id.*; factual determinations "must be made by a preponderance of the evidence," *id.* at 307. "'[A]ctual, not presumed, conformance' with the Rule 23 requirements remains necessary," *id.* at 322 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)), and "[a] party's assurance to the court that it intends or plans to meet the requirements is insufficient," *id.* at 318.[7]

**B.**

We join certain of our sister courts to hold that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*. The Supreme Court has emphasized that the class certification analysis must be "rigorous." *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)). This "rigorous analysis" applies to expert testimony critical to proving class certification

---

[7] Similarly, "[u]nder the present structure of Rule 23(c), . . . a district court [is] no longer permitted to issue a 'conditional certification' . . . because [a] trial court must 'make a definitive determination that the requirements of Rule 23 have been met before certifying a class.'" *In re NFL Players Concussion Injury Litig.*, --- F.3d ---, ---, No. 14-8103, 2014 WL 7331936, at *6 (3d Cir. Dec. 24, 2014) (third alteration in original) (citation and internal quotation marks omitted) (quoting *Hydrogen Peroxide*, 552 F.3d at 320).

requirements. *See, e.g., Comcast*, 133 S. Ct. at 1433 (citing *Dukes*, 131 S. Ct. at 2551-52); *Hydrogen Peroxide*, 552 F.3d at 323. As part of the "rigorous analysis," the Court has clarified, "[a] party seeking class certification must affirmatively demonstrate his compliance" with Rule 23. *Dukes*, 131 S. Ct. at 2551. This means that the party seeking certification must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432 (emphasis in original) (quotation marks and citation omitted). Expert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot "prove" that the Rule 23(a) prerequisites have been met "in fact," nor can it establish "through evidentiary proof" that Rule 23(b) is satisfied. Other courts of appeals have reached this conclusion. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012) ("When an expert's report or testimony is 'critical to class certification,' we have held that a district court must make a conclusive ruling on any challenge to that expert's qualifications or submissions before it may rule on a motion for class certification." (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (per curiam))); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011) (approving "a focused *Daubert* analysis which scrutinized the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence");[8] *see also Ellis v. Costco Wholesale Corp.*, 657

---

[8] We have no occasion to examine whether there might be some variation between the Seventh and Eighth Circuit

F.3d 970, 982 (9th Cir. 2011) (citing the Supreme Court's dictum in *Dukes* and stating, "In its analysis of Costco's motions to strike [expert testimony at the class certification stage], the district court correctly applied the evidentiary standard set forth in *Daubert*"). Furthermore, we believe the Supreme Court's dictum in *Dukes* buttresses our decision. *See Dukes*, 131 S. Ct. at 2553-54 ("doubt[ing]" a district court's "conclu[sion] that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings").

In the District Court, plaintiffs relied on expert testimony to produce most of their antitrust impact analyses and damages models, which they offered to demonstrate that common questions predominated over individual questions as required by Rule 23(b)(3). The court evaluated the expert testimony and, in part because it held the testimony "could evolve to become admissible evidence" at trial, determined

---

formulations. Consistent with our holding here, both courts limit the *Daubert* inquiry to expert testimony offered to prove satisfaction of Rule 23's requirements. *See Zurn Pex*, 644 F.3d at 614 (approving the district court's "focused *Daubert* analysis which scrutinized the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence"); *Messner*, 669 F.3d at 814 ("[A] *Daubert* hearing is necessary under *American Honda* only if the witness's opinion is 'critical' to class certification."); *Am. Honda*, 600 F.3d at 816 (holding that a trial court must resolve challenges to an expert's qualifications as well as "any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification").

that it satisfied Rule 23. 283 F.R.D. at 243-45 (quoting *Behrend*, 655 F.3d at 204 n.13). The court also stated that "[a]t the present stage of the litigation, the Court also rejects Ortho's arguments regarding the reliability of plaintiffs' damages models." *Id.* at 243.[9]

Because Ortho consistently challenged the reliability of plaintiffs' expert's methodologies and the sufficiency of his testimony to satisfy Rule 23(b)(3), we leave it to the District Court on remand to decide in the first instance which of Ortho's reliability attacks, if any, challenge those aspects of plaintiffs' expert testimony offered to satisfy Rule 23 and then, if necessary, to conduct a *Daubert* inquiry before assessing whether the requirements of Rule 23 have been met.[10]

---

[9] Plaintiffs contend Ortho waived the opportunity to bring a *Daubert* challenge. But in the trial court proceedings, Ortho consistently challenged the reliability of plaintiffs' expert's models and the sufficiency of his testimony to satisfy Rule 23(b)(3).

[10] As we explained in *Hydrogen Peroxide*,

> [O]pinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded, under *Daubert* or for any other reason. Under Rule 23 the district court must be "satisfied," *Falcon*, 457 U.S. [147,] 161 [(1982)], or "persuaded," [*In re Initial Pub. Offerings Sec. Litig.*], 471 F.3d [24,] 41 [(2d Cir. 2006)], that each requirement is met before certifying a class. Like any

11

**IV.**

For the foregoing reasons, we will vacate the class certification order and remand for proceedings consistent with this opinion.

---

> evidence, admissible expert opinion may persuade its audience, or it may not. This point is especially important to bear in mind when a party opposing certification offers expert opinion. The district court may be persuaded by the testimony of either (or neither) party's expert with respect to whether a certification requirement is met. Weighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands.

*Hydrogen Peroxide*, 552 F.3d at 323 (citations and footnote omitted). *See also generally id.* at 324 ("That weighing expert opinions is proper does not make it necessary in every case or unlimited in scope. . . . In its sound discretion, a district court may find it unnecessary to consider certain expert opinion with respect to a certification requirement, but it may not decline to resolve a genuine legal or factual dispute because of concern for an overlap with the merits.").